T.C. Memo. 2006-121

UNITED STATES TAX COURT

MARK D. GEORGE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19063-03.              Filed June 13, 2006.

Mark D. George, pro se.

<u>Anne D. Melzer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of $5,149
and $8,027 in petitioner's Federal income taxes for 2000 and
2001, respectively.  Respondent also determined additions to tax
under section 6651(a)(1) of $1,287.25 and $2,006.75 for the years
in issue, respectively.  Additionally, respondent determined

additions to tax under section 6654(a) of $275.03 and $320.77 for the years in issue, respectively.

After concessions by the parties, the issues for decision are:

(1) Whether compensation that petitioner received in 2000 and 2001 is taxable to him;

(2) whether petitioner is entitled to itemized deductions for the years in issue;

(3) whether petitioner is liable for the addition to tax under section 6651(a)(1) for 2000; and

(4) whether petitioner is liable for the addition to tax under section 6654(a) for the years in issue.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner had a mailing address in Syracuse, New York, at the time that he filed his petition.

Petitioner is a member of the Onondaga, a constituent Nation of the Iroquois Confederacy. Petitioner worked for Ridley Electric Co., Inc. (Ridley), during the years in issue. While employed by Ridley, petitioner worked mainly on commercial buildings, in particular, the Turning Stone Casino. In 2000,

petitioner received $32,170 in wages from Ridley and $5,618 in unemployment compensation. In 2001, petitioner received $50,003.94 in wages from Ridley. Petitioner did not have any Federal taxes withheld from his wages during these years because he claimed he was exempt on his Form W-4, Employee's Withholding Allowance Certificate. Petitioner did not make any estimated tax payments for the years in issue. Petitioner is entitled to only one exemption for 2000 and 2001. Petitioner is not entitled to any income tax credits for 2000 and 2001.

In 2000, petitioner made a noncash contribution of a 1986 Ford XL pickup truck with approximately 194,317 miles on it to the National Kidney Foundation of Central New York (NKF) in Syracuse, New York. He received a letter from NKF confirming receipt of the pickup truck and verifying that petitioner did not receive any goods or services in return for the donation. In 2000, petitioner paid dues to his local union and the International Brotherhood of Electrical Workers of $1,319.06 and $237.60, respectively.

In 2001, petitioner incurred a casualty loss when tools and change amounting to approximately $565 were stolen from his vehicle.

Petitioner mailed to the Internal Revenue Service (IRS) a Form 1040, U.S. Individual Income Tax Return, for 2000 showing his adjusted gross income of $37,789.08 and a tax liability of

zero.  The Form 1040 was not accepted by the IRS and was returned to petitioner as a frivolous return.

Petitioner filed a Form 1040 for 2001 showing adjusted gross income of $50,003.94 and a tax liability of zero.  He attached a copy of his Form W-2, Wage and Tax Statement, for the year and documents summarizing his legal argument that Native Americans are not subject to income tax.  The 2001 return, though similar to petitioner's 2000 return, was not returned to petitioner.

One of the documents attached to the 2001 return was Executive Order 13175 of November 6, 2000, Consultation and Coordination With Indian Tribal Governments.  65 Fed. Reg. 67249 (Nov. 9, 2000).  The Executive order provides direction to Federal agencies to "establish regular and meaningful consultation and collaboration with tribal officials in the development of Federal policies that have tribal implications".  "Policies that have tribal implications"--

> refers to regulations, legislative comments or proposed legislation, and other policy statements or actions that have substantial direct effects on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal Government and Indian tribes.  [Id.]

The fundamental principles of the Executive order are to continue to recognize the Indian tribes as domestic dependent nations under the protection of the United States, work with the Indian tribes on a government-to-government basis, and recognize the

right of Indian tribes to self-government and support tribal sovereignty and self-determination.  The consultation requirement in Executive Order 13175 provides that "Each agency shall have an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications."  Id. at 67250.  Executive Order 13175 does not revoke or supersede any statute or regulation.

OPINION

Wages and Unemployment Compensation

Section 1 imposes a tax on all taxable income.  Section 61(a)(1) includes in gross income "all income from whatever source derived", including compensation for services.  Respondent thus determined that the amounts paid to petitioner by Ridley and his unemployment compensation were taxable income.  Petitioner contends that he is not a U.S. citizen, but rather an "Indian not paying taxes".  Citing a number of treaties and statutes, he argues that his compensation is exempt from tax because he is an "Onondaga and as such entitled to the exemption".  Petitioner has used similar arguments in the past, and the Court has previously found that he is not exempt from taxation on his income.  George v. Commissioner, T.C. Memo. 1989-401.

Native Americans are subject to the same Federal income tax laws as are other U.S. citizens, unless there is an exemption explicitly created by treaty or statute.  Squire v. Capoeman, 351

U.S. 1, 6 (1956); <u>Estate of Poletti v. Commissioner</u>, 99 T.C. 554, 557-558 (1992), affd. 34 F.3d 742 (9th Cir. 1994); see <u>Allen v. Commissioner</u>, T.C. Memo. 2006-11; see also <u>George v. Commissioner</u>, <u>supra</u>; Rev. Rul. 2006-20, 2006-15 I.R.B. 746.  Any exemption must be based on the clear and unambiguous language of a statute or treaty.  <u>Squire v. Capoeman</u>, <u>supra</u>; see <u>Allen v. Commissioner</u>, <u>supra</u>.  Petitioner has not shown that any of the cited treaties or statutes specifically exempts any of his compensation.

In this case, petitioner relies on Executive Order 13175 of November 6, 2000.  65 Fed. Reg. 67249 (Nov. 9, 2000).  He contends that the Executive order overrides all prior law on the subject.  Petitioner's reliance on Executive Order 13175 is misplaced.  As described in our findings, the Executive order provides policymaking criteria for agencies to follow when formulating and implementing policies that have tribal implications.  However, the Executive order does not contain any language regarding the taxation of Native Americans.  Further, section 10 of the Executive order states:

> This order is intended only to improve the internal management of the executive branch, and is not intended to create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a party against the United States, its agencies, or any person.  [Exec. Order 13175, 65 Fed. Reg. 67252.]

Therefore, Executive Order 13175 does not change decided law that Native Americans are subject to income tax.  In any event, an

Executive order is judicially enforceable only if it has the force and effect of law. <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 303-304 (1979). Executive Order 13175 lacks the force and effect of law because it is not grounded in a statutory mandate. <u>Id.</u> at 304-305. Petitioner had taxable income and is liable for the 2000 and 2001 deficiencies.

<u>Itemized Deductions</u>

The burden of showing a right to a claimed deduction rests with the taxpayer. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). The taxpayer must maintain records sufficient to substantiate the amounts of the deductions claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. If the taxpayer does not retain the required records, the burden of proof does not shift to respondent. Sec. 7491(a)(2)(A) and (B).

At trial, petitioner presented the letter from NKF and a computer printout from CarPrices.com showing the wholesale value of a 1986 Ford F250 SuperCab 4WD, taking the mileage on the truck into consideration, to be $2,960.24 and the retail value to be $5,540.47. Petitioner is claiming a $5,000 deduction for the donation of the truck.

Under section 170(a)(1), a deduction is allowed for charitable contributions made within the year. See sec. 1.170A-1, Income Tax Regs. The regulations state that the amount to be allowed for a charitable contribution of property other than

money is to be the "fair market value of the property at the time of the contribution". Sec. 1.170A-1(c)(1), Income Tax Regs. Generally, a taxpayer must maintain certain records in order to claim a deduction for a charitable contribution. The taxpayer must have a receipt (or letter) from the donee showing the name of the donee, the date and location of the contribution, and a description of the property. Sec. 1.170A-13(b)(1) and (2), Income Tax Regs. Additionally, the regulations require that a taxpayer taking a deduction in excess of $500 must maintain records that show the fair market value of the property at the time of the contribution and the method utilized in determining the fair market value; the manner and date of acquisition of the property; and the cost or other basis of the property, adjusted as provided by section 1016. See sec. 1.170A-13(b)(2)(ii) and (3)(i), Income Tax Regs.

The only information in evidence is the letter from NKF confirming receipt of the truck with a description. There is no reliable evidence of the fair market value of the truck at the time that it was contributed. The printout from CarPrices.com gives no indication as to how adjustments are made or how, sight unseen, the fair market value of the vehicle is determined. There is no evidence that CarPrices.com is a reliable source of market information. Additionally, there is no evidence proving petitioner's original cost or other basis in the truck.

Therefore, petitioner is not allowed a deduction for the contribution of his truck in 2000.

Additionally, petitioner claims that he is entitled to a deduction for the $1,556.66 of union dues that he paid in 2000 and for the $565 casualty loss in 2001. A taxpayer may either elect the standard deduction allowed by statute or, in the event his deductions amount to more than the standard deduction for that year, elect to itemize his deductions on Schedule A, Itemized Deductions. See secs. 63(b), 67. The standard deductions for a single taxpayer in 2000 and 2001 were $4,400 and $4,550, respectively. Sec. 63(c)(2). In the absence of other evidence, neither the deduction of $1,556.66 in 2000 nor $565 in 2001 establishes petitioner's right to deductions in excess of the standard deductions allowed by respondent. (With respect to the casualty loss, his deduction would also be limited or eliminated by section 165(h).)

<u>Additions to Tax</u>

Respondent determined an addition to tax under section 6651(a)(1) for failure to file the 2000 return. Respondent conceded the addition to tax for the similar 2001 return. Respondent has the burden of production to show that petitioner did not file his 2000 return. Sec. 7491(c). To avoid the addition to tax, petitioner has the burden of proving that the failure to file did not result from willful neglect and was due

to reasonable cause.  See United States v. Boyle, 469 U.S. 241, 245 (1985).  To prove reasonable cause, a taxpayer must show that he or she exercised ordinary business care and prudence but nevertheless could not file the return when it was due.  See Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

At trial, petitioner testified that he mailed his 2000 income tax return to the IRS and that it had been returned to him as frivolous.  Petitioner contends that the return was not frivolous because he is exempt from income tax.  Respondent produced no evidence that petitioner's return was not received by the IRS.  Respondent contends that petitioner's original return (which listed wages and unemployment compensation totaling $37,789.08, but listed total tax as "N/A" and total amount owed as "$0", similar to his 2001 return) was not a valid return and that petitioner was liable for the addition to tax.

A document constitutes a "return" for Federal income tax purposes if:  (1) It contains sufficient data to calculate tax liability; (2) it purports to be a return; (3) it represents an honest and reasonable attempt to satisfy the requirements of the tax law; and (4) it is executed under penalties of perjury. Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986); see also Cabirac v. Commissioner, 120 T.C. 163, 169 (2003); Coulton v. Commissioner, T.C. Memo. 2005-199.

Petitioner's 2000 return (which he tried to file but was prevented from doing so by the IRS's action of returning it to him unfiled) disclosed the income and unemployment compensation he received for that year. Petitioner mistakenly relied on the Executive order to claim that he had zero tax liability, but there was sufficient data to calculate tax liability. The IRS could have filed the return as received and determined a penalty for negligence or disregard of rules and regulations. In view of his attempt to comply, however, petitioner is not liable for the section 6651(a) addition to tax for 2000. Petitioner is warned that further claims that he is exempt from taxes because he is a Native American may warrant sanctions under section 6662 or section 6673 for frivolous or groundless arguments. See sec. 6673(a)(1)(B).

Respondent also determined additions to tax under section 6654(a) for failure to pay estimated taxes for the years in issue. Petitioner made no estimated tax payments, and no income taxes were withheld for 2000 and 2001. In the absence of special exceptions not applicable here, petitioner is liable for this

addition to tax for the years in issue.  <u>Grosshandler v.
Commissioner</u>, 75 T.C. 1, 20-21 (1980).

To reflect the foregoing,

> <u>Decision will be entered for
> respondent as to the deficiencies
> and additions to tax under section
> 6654 for 2000 and 2001 and for
> petitioner as to the additions to
> tax under section 6651 for 2000 and
> 2001.</u>