T.C. Memo. 2016-146

UNITED STATES TAX COURT

BETH M. HAILSTOCK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15084-14.　　　　　　　　　　　Filed August 8, 2016.

<u>Alvertis W. Bishop, Jr.</u>, for petitioner.

<u>Gary R. Shuler, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal

income tax, additions to tax under section 6651(a)(1),[1] and accuracy-related

penalties under section 6662(a) as follows:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|-----------|-----------|
| 2005 | $16,394 | $4,098.50 | $3,278.80 |
| 2006 | 50,970 | 12,742.50 | 10,194.00 |
| 2007 | 55,485 | 13,870.50 | 11,097.00 |
| 2008 | 43,767 | 10,932.25 | 8,753.40 |
| 2009 | 40,736 | 10,183.25 | 8,147.20 |

After concessions by the parties,[2] the issues remaining for decision are:

(1) whether petitioner received unreported rental income for the taxable years 2006, 2008, and 2009; (2) whether petitioner is entitled to deductions claimed on her Schedules E, Supplemental Income and Loss, in excess of those that respondent allowed; (3) whether loss deductions claimed on petitioner's Schedules E should be subject to the passive activity loss limitations of section 469; (4) whether petitioner is entitled to certain deductions claimed on Schedules A, Itemized Deductions, for the taxable years 2005, 2007, 2008, and 2009; (5) whether petitioner is entitled to the standard deduction for the taxable years 2006 and 2007; (6) whether petitioner is liable for additions to tax under section

---

[2]In his pretrial memorandum respondent set forth 118 separately numbered issues. At the conclusion of trial on September 23, 2015, the Court encouraged the parties to settle any issues that could be resolved on the basis of the evidence and testimony presented at trial. In his opening brief respondent raises seven questions presented and states that all other issues raised in the notice of deficiency and pleadings were disposed of in the parties' stipulation of settled issues.

[*3] 6651(a)(1) for the taxable years 2005-09; and (7) whether petitioner is liable for accuracy-related penalties under section 6662(a) for the taxable years 2005-09.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the stipulation of settled issues, and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Ohio.

Before 2005 petitioner worked for the City of Cincinnati, Ohio, as a health inspector. Sometime in 2004 petitioner left her job and began taking real estate courses to learn about the business of acquiring, rehabilitating, renting, and selling properties. These courses cost petitioner thousands of dollars, and at least one course required petitioner to travel to Florida for a five-day "boot camp".

Between 2003 and 2008 petitioner purchased numerous properties using an inheritance, savings, two lines of credit, and credit cards. The following table summarizes petitioner's relevant property acquisitions:

| Property | Acquisition Date | Purchase Price | Property Type |
|---|---|---|---|
| 1809 Fairfax Ave. | 9/12/2003 | 80,000 | Apartment complex |
| 1805 Fairfax Ave. | 1/26/2004 | 66,000 | Apartment complex |
| 2210 Calumet St. | 4/1/2004 | 65,000 | Two-family dwelling |
| 2202 Calumet St. | 4/14/2004 | 47,000 | Residential property |
| 138 Winkler St. | 4/14/2004 | 47,000 | Residential vacant lot |
| 1620 De Sales Ln. | 9/8/2004 | Inheritance | Three-family dwelling |
| 1516 Ruth Ave. | 9/8/2004 | Inheritance | Single-family dwelling |

| [*4] 2635 Victoria Pkwy. | 9/8/2004 | Inheritance | Commercial vacant property |
|---|---|---|---|
| 1517 Ruth Ave. | 9/20/2004 | 27,500 | Three-family dwelling |
| 137 Dorsey St. | 8/11/2004 | -0- | Residential vacant lot |
| 138 Dorsey St. | 8/11/2004 | -0- | Residential vacant lot |
| 1911 Auburn Ave. | 8/23/2004 | -0- | Residential vacant lot |
| 1913 Auburn Ave. | 8/23/2004 | -0- | Residential vacant lot |
| 1515 Ruth Ave. | 11/12/2004 | Inheritance | Single-family dwelling |
| 1823 Fairfax Ave. | 11/24/2004 | 34,000 | Single-family dwelling |
| 201 Mulberry Ave. | 3/8/2005 | 34,000 | Two-family dwelling |
| 1112 Race St. | 4/21/2005 | 95,500 | Retail (w/ apartment) |
| 607 Tafel St. | 4/21/2005 | -0- | Residential vacant lot |
| 1619 Fairfax Ave. | 10/3/2005 | 20,500 | Single-family dwelling |
| 1668 California St. | 11/22/2005 | 24,000 | Retail |
| 130 Malvern Pl. | 3/1/2006 | 3,500 | Two-family dwelling |
| 140 Mulberry St. | 4/24/2006 | -0- | Two-family dwelling |
| 32 Mulberry St. | 6/20/2006 | -0- | Residential vacant lot |
| 9103 Brehm Rd. | 7/6/2006 | 219,000 | Single-family dwelling |
| 1729 Kinney Ave. | 9/20/2006 | 42,500 | Two-family dwelling |
| 4027 Cherry St. | 10/9/2006 | 17,000 | Two-family dwelling |
| 2541 Hemlock St. | 11/20/2006 | 16,900 | Two-family dwelling |
| 1923 Dana Ave. | 2/7/2007 | 19,000 | Single-family dwelling |
| 6187 Coleridge Ave. | 1/18/2008 | 2,000 | Residential vacant lot |
| 6189 Coleridge Ave. | 1/18/2008 | 2,000 | Residential vacant lot |
| 6191 Coleridge Ave. | 1/18/2008 | 2,000 | Residential vacant lot |
| 1407 Race St. | 8/4/2008 | 18,500 | Apartment complex |

Petitioner rented and incurred expenses in relation to some of the properties; she sold some of the properties within one year of acquisition (without renting); and she held some of the properties for investment (without renting).

On December 21, 2006, petitioner filed articles of organization with the Ohio secretary of state to form Character Homes, LLC. Petitioner is the sole member of Character Homes, LLC.

From 2005 to 2009 petitioner devoted substantial time and effort to her real estate endeavors and did not have other employment. She spent well over 40

[*5] hours per week carrying on her real estate business. Petitioner's duties included: checking messages for work orders, purchasing materials and cleaning supplies, supervising workers doing rehabilitation work, meeting with and conducting background checks on prospective tenants, executing leases, handling complaints regarding existing tenants, searching for new properties to purchase, taking real estate classes, and collecting rent payments from tenants.

Filing of Returns and Examination

On October 11, 2011, respondent received from petitioner a Form 1040, U.S. Individual Income Tax Return, for each of the taxable years 2005, 2006, 2007, 2008, and 2009 (original returns). On each original return petitioner listed her occupation as "Real Estate Professional". Petitioner reported all of her real estate activities (i.e., renting, investing, and selling) on Schedules C, Profit or Loss From Business. On her respective Schedules C attached to the original returns petitioner reported gross receipts or sales (on line 1) of $22,350 for 2005, $14,400 for 2006, $71,300 for 2007, $112,875 for 2008, and $119,965 for 2009.

At a date not included in the record the Internal Revenue Service (IRS) selected petitioner's 2005-09 original returns for examination. During the audit petitioner provided to respondent reconstructed Forms 1040 for 2005-09 that removed items she had previously reported on the respective Schedules C and

[*6] included new Schedules C, Schedules E, and revised Forms 4797, Sales of Business Property (reconstructed returns). Attached to the reconstructed returns for 2005-09 were Schedules E, which reported rents and expenses pertaining to petitioner's rental properties. On Schedules E (line 3) of her reconstructed returns petitioner reported rents received of $20,800 for 2005, $23,525 for 2006, $44,055 for 2007, $112,875 for 2008, and $124,513 for 2009.

On January 17, 2013, the IRS issued summonses to Huntington National Bank (Huntington Bank), Fifth Third Bank, Wells Fargo Bank, NA (Wells Fargo), CitiMortgage, Inc. (CitiMortgage), National Guardian Life Insurance Group (National Guardian), Equity Trust Co. (Equity Trust), Homeward Residential, Inc. (Homeward), AXA Equitable (AXA), J.J.B. Hilliard, W.L. Lyons, LLC (Hilliard-Lyons), and National Financial Services, LLC (National Financial). The summonses sought financial records for petitioner's known accounts with each institution pertaining to the taxable years in issue. Huntington Bank, Fifth Third Bank, Wells Fargo, CitiMortgage, National Guardian, Equity Trust, and Homeward responded to the summonses by providing documents and records, including account statements, signature cards, and loan documents.[3] AXA and

---

[3]Petitioner also provided respondent with certain account statements and documents concerning her accounts at Huntington Bank.

[*7] Hilliard-Lyons each indicated that they had no responsive documents to produce in accordance with the summonses, and National Financial did not respond to the summons as it was no longer a viable entity. Respondent used the documents and records obtained from these financial institutions to perform a bank deposits analysis and determine petitioner's income for the taxable years in issue. Respondent's bank deposits analysis discovered large discrepancies between the amounts deposited into petitioner's bank accounts and the amounts of rental income that petitioner reported on Schedules E of her reconstructed returns. Respondent determined that petitioner received rental income of $17,674 for 2005, $180,026 for 2006, $211,618 for 2007, $265,120 for 2008, and $256,213 for 2009.

On March 25, 2014, respondent issued to petitioner a notice of deficiency for the taxable years 2005-09, determining deficiencies, additions to tax, and penalties. Petitioner timely filed a petition with this Court.

## OPINION

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). For the presumption of correctness to attach with respect to unreported income, the Commissioner's determination must be supported by

**[\*8]** "'some evidentiary foundation linking the taxpayer to the alleged income-producing activity.'" <u>Blohm v. Commissioner</u>, 994 F.2d 1542, 1549 (11th Cir. 1993) (quoting <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 362 (9th Cir. 1979), <u>rev'g</u> 67 T.C. 672 (1977)), <u>aff'g</u> T.C. Memo. 1991-636; <u>see also</u> <u>United States v. Walton</u>, 909 F.2d 915, 919 (6th Cir. 1990). Once the Commissioner has produced evidence linking the taxpayer to an income-producing activity, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. <u>Helvering v. Taylor</u>, 293 U.S. 507, 515 (1935); <u>Tokarski v. Commissioner</u>, 87 T.C. 74 (1986).

To satisfy this initial burden of production, respondent introduced a bank deposits analysis for petitioner's bank accounts indicating that petitioner had received unreported income, the likely source of which was petitioner's real estate rental activities. On the basis of this credible evidence, we are satisfied that respondent's determinations in the notice of deficiency are entitled to their general presumption of correctness.

1. <u>Unreported Rental Income</u>

The Code defines gross income to mean "all income from whatever source derived", including rents. Sec. 61(a)(5). A taxpayer is required to maintain sufficient books and records establishing the amount of his or her income. Sec.

**[*9]** 6001; sec. 1.6001-1(a), Income Tax Regs. When a taxpayer fails to keep sufficient books of account or such books of account do not clearly reflect income, the Commissioner is authorized to determine his or her income "under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989); sec. 1.446-1(b)(1), Income Tax Regs. Where the taxpayer does not maintain adequate records as to the amount and source of his or her income, the Commissioner may appropriately employ the bank deposits method to estimate the taxpayer's income. Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). The IRS has great latitude in reconstructing a taxpayer's income, and the reconstruction need "only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. at 77. The bank deposits method assumes that all deposits into a taxpayer's bank account are taxable unless the taxpayer can show that the deposits are not taxable. DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). This presumption is rebutted to the extent that deposits are shown to include nontaxable amounts, and "the Government must

[*10] take into account any non-taxable source * * * of which it has knowledge."
Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964).

After the Commissioner reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the Commissioner's use of the bank deposits method is unfair or inaccurate. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994). The taxpayer must prove that the reconstruction is in error, and may do so, in whole or in part, by proving that a deposit is not taxable. Id. Nontaxable sources include funds attributable to "loans, gifts, inheritances, or assets on hand at the beginning of the taxable period." Burgo v. Commissioner, 69 T.C. 729, 743 n.14 (1978) (quoting Troncelliti v. Commissioner, T.C. Memo. 1971-72, 1971 Tax Ct. Memo LEXIS 260, at *14). A bank deposits analysis is not invalidated even if the Commissioner's calculations are not entirely correct. DiLeo v. Commissioner, 96 T.C. at 868.

In the respective Schedules C attached to her original returns petitioner reported gross receipts or sales of $22,350 for 2005, $14,400 for 2006, $71,300 for 2007, $112,875 for 2008, and $119,965 for 2009. During the audit of her original returns, petitioner provided to respondent reconstructed returns for the taxable years 2005-09, which removed all rental real estate activities previously reported on Schedules C and reported the rental real estate activities on Schedules E of the

[*11] reconstructed returns. In her respective Schedules E attached to the reconstructed returns petitioner reported rents received (on line 3) of $20,800 for 2005, $23,525 for 2006, $44,055 for 2007, $112,875 for 2008, and $124,513 for 2009. Respondent subsequently performed a bank deposits analysis on all of petitioner's known accounts for the taxable years 2005-09 and discovered discrepancies between the amounts deposited into petitioner's bank accounts and the amounts petitioner reported on her original and reconstructed returns. The following table summarizes respondent's bank deposits analysis.

| Item | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|
| Gross receipts/sales (Sch. C original returns) | $22,350 | $14,400 | $71,300 | $112,875 | $119,965 |
| Rents received (Sch. E reconstructed returns) | [1]20,550 | [2]22,775 | 44,055 | 112,875 | 124,513 |
| Rents received (bank deposits analysis) | 17,674 | 180,026 | 211,618 | 265,120 | 256,213 |
| Unreported rental income | [3]-0- | 157,251 | 167,563 | 152,245 | 131,700 |

[1]Petitioner's reconstructed return reported rental income of $20,800 for 2005; however, the notice of deficiency determined a lesser amount, $20,550. This $250 discrepancy results from respondent's determination that 201 Mulberry Avenue was not a rental property in 2005.

[2]Petitioner's reconstructed return reported rental income of $23,525 for 2006; however, the notice of deficiency determined a lesser amount, $22,775. This $750 discrepancy results from respondent's determination that 201 Mulberry Avenue was not a rental property in 2006.

[3]The notice of deficiency determined that petitioner underreported her 2005 rental income by $1,800. This appears to be an error as the rental income that petitioner reported on her original and reconstructed returns for 2005 exceeds the amount determined for this year by respondent's bank deposits analysis.

At trial petitioner offered explanations for specific unidentified deposits in respondent's bank deposits analysis. Petitioner explained that certain deposits

[*12] were attributable to nontaxable sources, including inheritances, transfers from her other bank accounts, credit card advances, and insurance refunds. Petitioner also explained that certain accounts did not belong to her. In total petitioner offered explanations establishing nontaxable deposits of $15,005.87 for 2005, $127,193.93 for 2006, $199,902.40 for 2007, $85,151.57 for 2008, and $86,518.64 for 2009. Respondent concedes that all items petitioner testified to at trial are nontaxable and further concedes that petitioner has no unreported rental income for the taxable years 2005 and 2007.[4] Therefore, the only amounts of unreported rental income still at issue are those amounts that petitioner admitted were income, could not recall the source of, or offered no testimonial or documentary evidence concerning. Accordingly, petitioner did not establish that

---

[4]The following table summarizes the amounts respondent conceded on the basis of petitioner's testimony at trial and the amounts of unreported income still in issue (i.e., $30,057.07 for 2006, $67,093.43 for 2008, and $45,181.36 for 2009).

| Item | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|
| Gross receipts/sales (original returns) | $22,350.00 | $14,400.00 | $71,300.00 | $112,875.00 | $119,965.00 |
| Rents received (reconstructed returns) | 20,550.00 | 22,775.00 | 44,055.00 | 112,875.00 | 124,513.00 |
| Rents received (bank deposits analysis) | 17,674.00 | 180,026.00 | 211,618.00 | 265,120.00 | 256,213.00 |
| Amount conceded as nontaxable unreported income | 15,005.87 | 127,193.93 | 199,902.40 | 85,151.57 | 86,518.64 |
| Still at issue | -0- | 30,057.07 | -0- | 67,093.43 | 45,181.36 |

**[*13]** the remaining amounts of unreported rental income identified in respondent's bank deposits analysis were attributable to nontaxable sources, and therefore we hold that petitioner had unreported rental income for 2006, 2008, and 2009 of $30,057.07, $67,093.43, and $45,181.36, respectively.

2.  Schedule E Rental Expense Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 6001 requires the taxpayer to maintain records sufficient to establish the amount of each deduction. See also sec. 1.6001-1(a), Income Tax Regs.

For the taxable years 2005-09 petitioner claimed deductions for expenses on Schedules E of her reconstructed returns in connection with various properties. On September 23, 2015, the parties filed a stipulation of settled issues in which they resolved various issues concerning petitioner's claimed Schedule E expense deductions. Not resolved in the parties' stipulation of settled issues are expenses in connection with the properties at 201 Mulberry Avenue and 9103 Brehm Road. With respect to 201 Mulberry Avenue, petitioner reported rents received on Schedules E of her 2005 and 2006 reconstructed returns of $250 and $750,

[*14] respectively. Petitioner did not report any rents received in connection with 201 Mulberry Avenue for the taxable years 2007, 2008, and 2009. For the taxable years 2005-09 petitioner claimed deductions for expenses on Schedules E of the reconstructed returns for 201 Mulberry Avenue that resulted in a loss for each year. Respondent argues that petitioner is not entitled to deduct any Schedule E expenses pertaining to 201 Mulberry Avenue because it was not an active rental property.

We agree with respondent and hold that petitioner is not entitled to deduct Schedule E expenses pertaining to 201 Mulberry Avenue. Petitioner reported minimal amounts ($250 and $750) of rental income connected with this property for 2005 and 2006 and also did not report any rental income for the taxable years 2007, 2008, and 2009. In 2009 the City of Cincinnati found the vacant property at 201 Mulberry Avenue to be in violation of housing codes, which further supports respondent's contention that the property was not an active rental property. Furthermore, petitioner did not provide any rental agreements, leases, documentation, or testimony indicating that 201 Mulberry Avenue was an active rental property from 2005 to 2009. In addition, petitioner failed to substantiate that she incurred expenses renting the property at 201 Mulberry Avenue or that these expenses were paid in the claimed years. Accordingly, we sustain

[*15] respondent's disallowance of petitioner's claimed Schedule E expense deductions for 201 Mulberry Avenue for the taxable years 2005-09.

Petitioner also claimed deductions for rental expenses on Schedules E of the 2007 and 2008 reconstructed returns in connection with 9103 Brehm Road. On her reconstructed returns for 2005-09 petitioner lists 9103 Brehm Road as her home address. Despite claiming deductions for rental expenses pertaining to 9103 Brehm Road for 2007 and 2008, petitioner reported no rental income for either year. Petitioner has provided no testimony, documentation, or persuasive argument to substantiate the claimed expense deductions pertaining to her home address. See sec. 280A(a). Therefore, we hold that petitioner is not entitled to the claimed Schedule E expense deductions for 9103 Brehm Road for the taxable years 2007 and 2008.

Respondent conceded petitioner's entitlement to various Schedule E expense deductions in the parties' September 23, 2015, stipulation of settled issues. In her reply brief petitioner argues that all of the Schedule E expense deductions claimed on her reconstructed returns should be allowed. However, petitioner did not provide any evidence to substantiate that she incurred or paid any Schedule E expenses in excess of the deductions that respondent allowed in the stipulation of settled issues. Accordingly, we hold that petitioner is not

[*16] entitled to any claimed Schedule E expense deductions in excess of those that respondent allowed.

3.  Passive Activity Loss

Sections 162 and 212 generally permit taxpayers to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business for the production of income.  In the case of an individual taxpayer, section 469 disallows any current deduction for a "passive activity loss".  Sec. 469(a)(1), (b).  A passive activity loss is the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any trade or business in which the taxpayer does not materially participate or any rental activity regardless of material participation.  Sec. 469(c)(1) and (2).

Rental activities of a qualifying taxpayer in a real property business (i.e., a real estate professional) are not per se passive activities.  Sec. 469(c)(7)(A).  If the taxpayer materially participates in the rental real estate activities, then these activities are treated as nonpassive activities and the section 469(a) disallowance does not apply to that portion of the claimed losses.  See Shiekh v. Commissioner, T.C. Memo. 2010-126, 2010 Tax Ct. Memo LEXIS 163, at *10.  A taxpayer

[*17] qualifies as a real estate professional if he or she owns at least one interest in rental real estate and meets both of the requirements of section 469(c)(7)(B):

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Because petitioner was not otherwise employed during the taxable years in issue, we need only turn our attention to the second part of the real estate professional test, i.e., section 469(c)(7)(B)(ii).  We look at all of a taxpayer's real property trades or businesses, including rental activities, to determine whether the 750-hour threshold is met.  Fitch v. Commissioner, T.C. Memo. 2012-358, supplemented by T.C. Memo. 2013-244.  If the taxpayer does not materially participate in a particular trade or business, the time he or she devotes to that particular activity does not count toward the 750-hour requirement.  See sec. 469(c)(7)(A)(ii), (B)(ii).  As a preliminary matter, we must determine whether petitioner materially participated in any of her "real property trades or businesses", specifically her rental real estate activities.  Only those real property trades or

[*18] businesses in which a taxpayer "materially participates" may be counted toward the 750-hour requirement.

In assessing "material participation", each interest in rental real estate will be treated as a separate rental real estate activity unless the taxpayer makes an election to treat all such activities as a single activity. Sec. 469(c)(7)(A); Fitch v. Commissioner, T.C. Memo. 2012-358; sec. 1.469-9(e)(1), Income Tax Regs. The statement of a taxpayer's election "must contain a declaration that the taxpayer is a qualifying taxpayer * * * and is making the election pursuant to section 469(c)(7)(A)", and it must be filed "with the taxpayer's original income tax return for the taxable year." Sec. 1.469-9(g)(3), Income Tax Regs. This statement of election requires an affirmative declaration by the taxpayer; simply listing multiple rental properties on a Schedule E, without more, is insufficient. See Kosonen v. Commissioner, T.C. Memo. 2000-107, 2000 Tax Ct. Memo LEXIS 121, at *12. A taxpayer's intention of aggregating properties, without a proper election, is also insufficient. Id. Once such an election is made, it remains in force until properly revoked. Sec. 1.469-9(g)(3), Income Tax Regs.

Although petitioner states in her reply brief that "[s]he did in fact make the election pursuant to IRC 469(c)(7)(A)", she submitted no evidence to support this contention. No statement of election appears in petitioner's original or

**[*19]** reconstructed returns for 2005-09. Further, petitioner provided no evidence that she made an election under section 469(c)(7)(A) on a prior year's return. Thus, on the record before us, petitioner has not met her burden of showing that she made an election under section 469(c)(7)(A) to treat all of her interests in rental real estate as a single activity. Accordingly, each property will be treated as a separate rental real estate activity, and whether she "materially participated" will be determined separately for each property. Sec. 1.469-9(e)(1), Income Tax Regs.

Material participation is defined as involvement in the operations of the activity that is regular, continuous, and substantial. Sec. 469(h)(1). As explained in section 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988), a taxpayer can satisfy the material participation requirement if the individual meets any one of the seven following tests:

> (1) The individual participates in the activity for more than 500 hours during such year;
>
> (2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;
>
> (3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

[*20]        (4) The activity is a significant participation activity * * * for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;

        (5) The individual materially participated in the activity * * * for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;

        (6) The activity is a personal service activity * * *, and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or

        (7) Based on all the facts and circumstances * * *, the individual participates in the activity on a regular, continuous, and substantial basis during such year.

"Participation" generally means all work done in an activity by an individual who owns an interest in the activity. Sec. 1.469-5(f)(1), Income Tax Regs. Guidance regarding the types of proof to be used in determining the extent of an individual's participation in an activity is found in section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb 25, 1988), which provides:

        (4) Methods of proof. The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

[*21] Petitioner satisfies the facts and circumstances test in section 1.469-5T(a)(7), Temporary Income Tax Regs., supra, because of her credible testimony and the substantial amount of money and time devoted to each rental property. Petitioner testified credibly and in detail about her duties in operating her real estate rental business. We find petitioner's narrative summary convincing because she owned numerous rental properties and conducted her business as a "one-man operation" without being otherwise employed. As previously discussed, petitioner spent well in excess of 40 hours each week doing work related to numerous rental properties (i.e., researching prospective properties, maintaining properties, supervising work orders, finding tenants, securing leases, and continuing education related to rental real estate). The record before the Court indicates that petitioner received sizable amounts of rental income during the taxable years in issue and used substantial amounts of her own resources to facilitate the rental operation. Petitioner's testimony is further buttressed by respondent's concession that she "rented and incurred expenses in connection with the parcels of real property located at 1515 Ruth Avenue, 1516 Ruth Avenue, 1809-1811 Fairfax Avenue, 1805-1807 Fairfax Avenue, 1112 Race Street, 1619 Fairfax Avenue, 2541 Hemlock Street, 1923 Dana Avenue, 1517 Ruth Avenue, 140 Mulberry Avenue, 1668 California Street, 1729 Kinney Avenue, 1823 Fairfax Avenue and

[*22] 1407 Race Street." Although we caution petitioner to construct contemporaneous time logs for her future real estate endeavors, we find her detailed and credible testimony to be a "reasonable means" of proof. See sec. 1.469-5T(f)(4), Temporary Income Tax Regs. On the basis of petitioner's testimony and the record as a whole, we conclude that petitioner did materially participate in each rental property reported on her reconstructed Schedules E for the taxable years in issue.[5] Because she has proven that she "materially participated" in operating each of her rental properties from 2005 to 2009, petitioner easily meets the 750-hour requirement of section 469(c)(7)(B)(ii). Accordingly, petitioner qualifies for the real estate professional exception under section 469(c)(7) for each of the taxable years in issue, and therefore her Schedule E losses are not subject to the passive loss limitations imposed by section 469.

4. Schedule A Itemized Deductions

In the notice of deficiency for the taxable years 2005, 2007, 2008, and 2009, respondent disallowed certain of petitioner's claimed Schedule A deductions as follows:

---

[5]As held above, 201 Mulberry Avenue and 9103 Brehm Road do not qualify as rental properties for any of the taxable years in issue and therefore are not aggregated to meet the 750-hour requirement of sec. 469(c)(7)(B)(ii).

[*23]      Deduction                    2005      2007      2008      2009

Medical and dental                ---     $3,900      ---       ---
Taxes paid                     $1,351      ---      $2,842    $3,386
Home mortgage interest            ---       ---     15,293    15,030
Charitable contributions        2,390     [1]7,724    5,727     8,315

[1]On brief respondent argues that this disallowance pertains to petitioner's claimed deduction for casualty or theft losses. However, petitioner did not claim any casualty or theft loss deductions for the taxable year 2007, and the notice of deficiency does not determine any adjustments concerning casualty or theft losses.

Petitioner did not offer any evidence or provide testimony regarding her entitlement to the disallowed itemized deductions. Because petitioner failed to substantiate her entitlement to these deductions, we will sustain respondent's determination disallowing the above itemized deductions as set forth in the notice of deficiency.[6] All computational matters will be resolved in the parties' Rule 155 computations consistent with the Court's opinion.

5. Standard Deductions

Respondent argues that petitioner is entitled to the standard deduction for her taxable years 2006 and 2007. Petitioner did not attach a Schedule A to her

---

[6]We note that the notice of deficiency allows petitioner additional medical and dental expense deductions for 2008 and 2009 of $4,425 and $977, respectively. However, respondent appears to argue on brief that these adjustments are disallowances. This discrepancy should be resolved in the parties' Rule 155 computation.

[*24] original or reconstructed 2006 return and claimed a standard deduction for head of household[7] of $7,550 for this year. On her original 2007 return petitioner claimed itemized deductions of $18,653;[8] however, on her reconstructed tax return petitioner did not attach a Schedule A and claimed a $7,850 standard deduction for head of household. For both years the Court assumes that petitioner would want the larger deduction amount[9] and therefore sustains respondent's use of the standard deduction. See sec. 63; George v. Commissioner, T.C. Memo. 2006-121, 2006 Tax Ct. Memo LEXIS 124, at *10.

6. Additions to Tax

Respondent determined that petitioner is liable for additions to tax pursuant to section 6651(a)(1) for the taxable years 2005-09. Respondent has the burden of production with respect to these additions to tax. See sec. 7491(c). To meet this

---

[7]The parties stipulate that petitioner has a son who was born on July 19, 1986.

[8]Petitioner calculated her Schedule A deductions on her 2007 original return as $10,929. This appears to be a computational error as the correct total is $18,653.

[9]Petitioner attached a Schedule A to her original return for 2007, claiming total itemized deductions of $18,653. As held supra part 4 of our opinion, petitioner is not entitled to $11,624 of this claimed amount, bringing her total itemized deductions to $7,029, which is less than the standard deduction for head of household.

**[\*25]** burden, respondent must produce evidence showing that the additions to tax are appropriate.  See id.; Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once respondent satisfies this burden, petitioner has the burden of proof with respect to exculpatory factors such as reasonable cause.  See Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6651(a)(1) imposes an addition to tax when a taxpayer fails to file a timely return unless the taxpayer establishes that the failure was due to reasonable cause and not due to willful neglect.  The addition to tax is equal to 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent.  Id.

Petitioner did not timely file Federal income tax returns for 2005-09.  Petitioner's income tax returns for the taxable years 2005-09 were due on or before April 17, 2006, April 16, 2007, April 15, 2008, October 15, 2009, and April 15, 2010, respectively.  Petitioner filed all of her original returns for the taxable years 2005-09 on October 11, 2011.  Thus, respondent has met his burden of production.  Petitioner has not provided evidence sufficient for us to find that her

**[\*26]** failure to timely file was due to reasonable cause.  Accordingly, we hold that petitioner is liable for the additions to tax under section 6651(a)(1).[10]

## 7. Accuracy-Related Penalties

Respondent determined that for the taxable years 2005-09 petitioner is liable for accuracy-related penalties pursuant to section 6662(a) and (b)(1) and (2) for underpayments attributable to negligence or substantial understatements of income tax.  Respondent bears the burden of production with respect to this penalty.  See sec. 7491(c).  To meet this burden, respondent must produce evidence establishing that it is appropriate to impose this penalty.  Once respondent has done so, the burden of proof is on petitioner to show that the penalty does not apply.  See Higbee v. Commissioner, 116 T.C. at 449.

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances.  Sec. 6662(c); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items

---

[10]The additions to tax are based on the amounts required to be shown as tax on the returns.  Those amounts will be determined in a Rule 155 computation.

**[*27]** properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Petitioner exhibited a lack of due care in failing to accurately report rental income and to properly substantiate claimed expenses. Respondent has met his burden of production with respect to the section 6662(a) penalties for negligence.

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). Petitioner has made no attempt to explain her failure to accurately report rental income or to properly substantiate expenses. Accordingly, we hold that petitioner is liable for the section 6662(a) accuracy-related penalties for negligence.[11]

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.

_____

[11]The sec. 6662(a) accuracy-related penalties are based on the amounts of any underpayments of tax, which will be determined in a Rule 155 computation.