T.C. Memo. 2017-68

UNITED STATES TAX COURT

PATRICIA S. WINDHAM, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23590-14.            Filed April 24, 2017.

James L. Chase, for petitioner.

Edwin B. Cleverdon, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge: Respondent determined a deficiency of $124,591 in, and an accuracy-related penalty of $24,918.20 in relation to, petitioner's 2010 Federal income tax. After concessions,[1] the issues remaining before the Court are whether

_____

[1]Petitioner conceded that she is liable for unreported taxable interest income of $8. Respondent conceded that petitioner is entitled to deduct the amount of

[*2] petitioner: (1) was a qualifying taxpayer in a real property trade or business under section 469(c)(7); (2) is entitled to a claimed deduction for unreimbursed employee business expenses; and (3) is liable for a section 6662(a) accuracy-related penalty.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The first stipulation of facts, the first supplemental stipulation of facts, the second supplemental stipulation of facts, the third supplemental stipulation of facts, and the facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioner resided in Florida when she timely filed her petition.

I.      Petitioner's Employment as a Stock Broker

Petitioner has been a stock broker for more than 30 years. She began her career with a national brokerage house in 1983, and in the year in issue she was employed by Wells Fargo in its brokerage department. During the year in issue

---

[1](...continued)
mortgage interest expense she claimed on her return. After trial respondent also conceded that petitioner is allowed all of the claimed deductions related to her rental real estate activities. There was no adjustment to petitioner's reported rental income. Respondent's only argument regarding the rental real estate activities is that petitioner is not a qualifying taxpayer under sec. 469(c)(7) and, therefore, petitioner's rental real estate activities are passive. Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] she managed a number of individual accounts with total assets of

approximately $70 million.  Petitioner generally worked at her brokerage office

from 12:30 p.m. until the U.S. markets closed each weekday.[2]  Petitioner was

compensated on the basis of her production.  For most of her client account

portfolios, petitioner was paid a commission up front and then received a "trail" on

the investment--a small amount of money received quarterly.  A few of her clients

preferred to actively trade common stock.  That was the only aspect of her

brokerage job that required her to be in her office regularly when the U.S. markets

were trading.

The U.S. stock markets were closed for various holidays on January 1,

January 18, February 15, April 2, May 31, July 5, September 6, November 25, and

December 24, 2010.[3]  Those days in petitioner's calendar are marked with an "H".[4]

Petitioner did not work in her brokerage office on those days.  On the days she did

work, petitioner would often stay at the office after the U.S. markets closed at

---

[2]The U.S. stock markets close at 3 p.m. central standard time.

[3]The Court takes judicial notice of those dates.  See Fed. R. Evid. 201.

[4]Petitioner's calendar entered into evidence started on Monday, January 11, 2010.  Friday, April 2, 2010, is not marked with an "H" in petitioner's calendar, but the space for that day on the calendar contains a diagonal line drawn across it and the words "Good Friday" written and circled at the top.

**[*4]** 3 p.m. for an hour and a half to do work for the various charities for which she volunteered. Petitioner had one administrative assistant who performed tasks associated with petitioner's brokerage work.

Petitioner frequently met with her brokerage clients during business lunches and dinners. The parties entered into evidence receipts for and stipulated that petitioner paid meals and entertainment expenses of $9,687.87. Most of the receipts include the name or names of the individual or individuals who were entertained. The receipts do not, however, include the business purpose for any of the meals and entertainment. Petitioner testified that the meals and entertainment expenses also included meals associated with her rental real estate activities and the various charities for which she volunteered. There are duplicate receipts, and many of the receipts are illegible. Wells Fargo reimbursed petitioner $500 annually for meals and entertainment expenses related to her client accounts.

II.    Petitioner's Rental Properties

In addition to her employment as a stock broker, petitioner owned 12 rental properties and a 50% interest in a vacant lot.[5] She had a home office where she

_____

[5]One of petitioner's rental properties was an apartment attached to her personal residence. Petitioner did not include the rental property attached to her personal residence when she calculated the number of hours she performed services for real property trades or businesses or to determine whether she

(continued...)

**[*5]** completed administrative tasks associated with her rental properties. Understanding the time commitment that would be necessary to manage multiple rental properties, petitioner set aside the morning hours before going to her brokerage office to complete those tasks and to handle other issues concerning her rental real estate. Although all of the properties were titled in petitioner's name, she conducted her rental real estate activities under Windham Agency, LC, a limited liability company (LLC).[6]

Petitioner managed all aspects of her rental properties, including vetting potential tenants, collecting rent, and evicting tenants when necessary. She also negotiated with, hired, and oversaw contractors and repairmen working on the rental properties. Additionally, petitioner acquired and maintained insurance on each rental property, maintained services and upkeep on vacant rental properties, maintained records for each rental property, and completed the necessary documents for her certified public account (CPA) to prepare her Federal income tax returns. Petitioner was interested in selling some of her rental properties, so

---

[5](...continued)
materially participated in those trades or businesses.

[6]Petitioner's LLC is registered as a Florida limited liability company with the Florida Department of State as "Windham Agency, L.C." and is a single-member LLC. Petitioner testified that the rental properties were titled in her name and not her LLC's for mortgage interest rate and insurance purposes.

[*6] she showed certain rental properties to potential buyers.  The following table details petitioner's approximate hours of participation for each rental property and the vacant lot in 2010.

| Rental property address | Hours of participation |
| --- | --- |
| Culpepper | 73.5 |
| North 9th Ave. | 99.5 |
| Via de Luna Road | 107.5 |
| Bayshore Drive | 104.5 |
| Port Royal | 103 |
| St. Alban Road[1] | 90 |
| Brookside Drive | 73 |
| Calle Hermosa | 89.75 |
| Fort Pickens Road | 54.5 |
| Maldonado | 94 |
| Apartment attached to personal residence | -0- |
| Lynn Haven (vacant lot) | 12 |
| Total | 901.25 |

[1]This property is a duplex.  Petitioner did not divide the hours between the two properties.

Petitioner credibly testified about the hours she spent in regard to the Maldonado property and the hours she spent in regard to the vacant lot in which she had a 50% ownership interest.  The parties entered into evidence summaries of

**[*7]** the hours petitioner spent on the other properties listed in the table supra, to which they agreed petitioner would have testified. Petitioner owned her rental properties during the tumultuous 2004 and 2005 hurricane seasons and during the recession of 2008. Petitioner discussed with an attorney the option of foreclosure of mortgages on her rental properties after the downturn of the real estate market but decided against it. In 2010 petitioner withdrew $182,025 from her retirement accounts to meet her rental real estate business expense requirements. Petitioner properly reported $148,893 of her withdrawal as taxable income for 2010.

III.    Petitioner's 2010 Form 1040

Petitioner timely filed her 2010 Form 1040, U.S. Individual Income Tax Return. She reported wage income of $285,437 from Wells Fargo along with the distributions from her retirement accounts of $182,025. She attached a Schedule C, Profit or Loss From Business, to her Form 1040, which reported a loss of $307,933 from her rental properties. Petitioner reported gross receipts or sales of $103,629, which was the amount of income she received from all of her rental properties for that year. On a document attached to petitioner's 2010 Form 1040, she listed the origins of her gross receipts or sales.[7] Some amounts had a property address next to them, and other amounts had an entity's name next to them.

---

[7]The document appears to be one petitioner's CPA generated.

[*8] Petitioner reported total expenses of $411,562 on her Schedule C. Petitioner did not attach an election to treat all of her rental properties as one activity to her 2010 Form 1040.[8] Petitioner also claimed a deduction for unreimbursed employee expenses of $49,664 on a Schedule A, Itemized Deductions, attached to her return. The deduction was for meals and entertainment expenses, vehicle expenses, an employee bonus expense, cell phone expenses, and business expenses. Petitioner paid a CPA to prepare her 2010 Form 1040.[9]

IV.    Notice of Deficiency

Respondent issued to petitioner a notice of deficiency, determining that her loss from her rental real estate activities was passive and could not be used to offset her Wells Fargo wage income. He moved petitioner's rental real estate income and expenses to Schedule E, Supplemental Income and Loss (From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.), but disallowed deductions for most of petitioner's reported expenses. See supra note 1. Respondent also disallowed deductions for all of petitioner's

---

[8]The parties also entered into evidence petitioner's 2009 Form 1040, which also had a Schedule C attached to it reporting petitioner's income and expenses from her rental properties. There was no election to treat petitioner's rental properties as one activity attached to her 2009 Form 1040 either.

[9]The same CPA had prepared petitioner's 2009 Form 1040. See supra note 8.

**[*9]** unreimbursed employee business expenses reported on Schedule A and determined that petitioner was liable for an accuracy-related penalty. Petitioner filed a petition with the Court for a redetermination of that deficiency.

OPINION

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under certain circumstances the burden of proof as to factual matters may shift to the Commissioner pursuant to section 7491(a). Petitioner argued for the first time on brief that the burden of proof under section 7491(a) should be shifted to respondent. The Court need not decide which party bears the burden of proof as to factual matters because its decision rests on a preponderance of the evidence. See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).

I.   Passive Activities

Sections 162 and 212 generally permit a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business or for the production of income. In the case of an individual, section 469 generally disallows any current deduction for a passive activity loss. Sec. 469(a)(1), (b). A passive activity loss is equal to the aggregate losses from all passive activities for

[*10] a taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1).[10] A passive activity is any trade or business in which the taxpayer does not materially participate or any rental real estate activity regardless of material participation. Sec. 469(a)(1), (c)(1) and (2).

If a taxpayer can prove that she is a qualifying taxpayer in a real property trade or business (i.e., a real estate professional), her rental real estate activities will not be considered per se passive activities. Sec. 469(c)(7)(A). Thus, the activities are treated as nonpassive, and the section 469(a) disallowance does not apply to that portion of the claimed losses. See Shiekh v. Commissioner, T.C. Memo. 2010-16, 2010 WL 2342408, at *6. A taxpayer qualifies as a real estate professional if she owns at least one interest in rental real estate and meets both of the requirements of section 469(c)(7)(B):

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

---

[10]The effect of the passive activity loss disallowance rule is that deductions related to passive activities are allowed against income from passive activities and the excess (i.e., the amount by which the deductions related to the passive activities exceed the income from passive activities) cannot be deducted from income from activities other than passive activities. See Krukowski v. Commissioner, 279 F.3d 547, 549 (7th Cir. 2002), aff'g 114 T.C. 366 (2000).

**[*11]**         (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Because both of the conditions to qualify as a real estate professional require material participation in the trade or business, the Court must first decide whether petitioner materially participated in her rental real estate activities.  See Hailstock v. Commissioner, T.C. Memo. 2016-146, at *17.

A.     Material Participation

1.     Election

For the Court to decide whether petitioner materially participated in her rental real estate activities, each interest in rental real estate will be treated as a separate activity unless she elected to treat all her rental real estate activities as one activity.  See sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs.  A taxpayer must clearly notify the Commissioner of the taxpayer's intent to make an election.  See Knight-Ridder Newspapers Inc. v. United States, 743 F.2d 781, 795 (11th Cir. 1984).  To make an election, "the taxpayer must exhibit in some manner * * * his unequivocal agreement to accept both the benefits and burdens of the tax treatment afforded" by the governing statute.  Young v. Commissioner, 83 T.C. 831, 839 (1984), aff'd, 783 F.2d 1201 (5th Cir. 1986).

[*12]  To elect to group several rental real estate activities as one activity, a taxpayer's election "must contain a declaration that the taxpayer is a qualifying taxpayer * * * and is making the election pursuant to section 469(c)(7)(A)", and it must be filed "with the taxpayer's original income tax return for the taxable year." Sec. 1.469-9(g)(3), Income Tax Regs.  A taxpayer has not made an election if it is not clear from the return that an election has been made.  See Young v. Commissioner, 783 F.2d at 1206.  The Court has held that aggregating losses from rental real estate on a tax return is not an election to treat the separate rental properties as one activity.  Shiekh v. Commissioner, 2010 WL 2342408, at *4 (citing Kosonen v. Commissioner, T.C. Memo. 2000-107).

Petitioner admitted that she did not include an election to treat her rental real estate activities as one activity.  She argued that she was not required to do so under Rev. Proc. 2010-13, sec. 4.06, 2010-4 I.R.B. 329, 330, which states:  "A taxpayer is not required to file a written statement reporting the grouping of the trade or business activities and rental activities that have been made prior to the effective date of this revenue procedure * * * until the taxpayer makes a change to the grouping as described in sections 4.03 and 4.04 of this revenue procedure." Rev. Proc. 2010-13, supra, is effective for tax years beginning on or after January 25, 2010.  Id. sec. 5.

**[*13]** Petitioner's tax year in issue is 2010, which began on January 1, 2010. Therefore, Rev. Proc. 2010-13, supra, does not apply, and petitioner was required to file an election as prescribed under the Code. Petitioner admitted that she made no such election; therefore, her rental real estate activities must be treated as separate in determining whether she materially participated in them for 2010.

     2.     Petitioner's Participation in Her Rental Real Estate Activities

Involvement in an activity that is regular, continuous, and substantial will qualify as material participation. Sec. 469(h)(1). The regulations set forth seven tests that a taxpayer can satisfy to prove that she materially participated in an activity. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). Three of those tests are applicable here:

> (2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;

> (3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year; or

> \*     \*     \*     \*     \*     \*     \*

> (7) Based on all the facts and circumstances (taking into account the rules in paragraph (b) of this section), the individual

**[*14]** participates in the activity on a regular, continuous, and substantial basis during such year.

> [Id.]

If the individual participates in an activity for 100 hours or less during the taxable year, she shall not be treated as materially participating in the activity under section 1.469-5T(a)(7), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). See sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

### a. Via de Luna Road, Bayshore Drive, and Port Royal Properties

Petitioner had three rental real estate activities in which she had over 100 hours of participation each in 2010--Via de Luna Road, Bayshore Drive, and Port Royal. See supra pp. 5-6. The Court found credible petitioner's testimony about how she managed her rental real estate activities. The Court also found credible the number of hours petitioner listed in Exhibit 21-J as the time she spent working on each of those three rental properties. Furthermore, the Court notes that petitioner took significant distributions from her retirement accounts-- approximately 77% of which was taxable and on which she properly paid income tax in 2010--to keep her rental real estate activities afloat. Those funds were used to maintain all of her rental properties. Petitioner spent a considerable amount of

[*15] time and money to keep her rental real estate activities viable. Petitioner satisfies the facts and circumstances test in section 1.469-5T(a)(7), Temporary Income Tax Regs., supra, in relation to the Via de Luna Road, Bayshore Drive, and Port Royal properties. Therefore, petitioner materially participated in those activities for 2010.[11]

### b. Petitioner's Other Rental Properties

According to petitioner's testimony for the Maldonado property and the hours listed in Exhibit 21-J for the Culpepper, North 9th Avenue, St. Alban Road, Brookside Drive, Calle Hermosa, and Fort Pickens Road properties, petitioner participated less than 100 hours in a rental real estate activity for each of those properties in 2010.[12] Because she participated less than 100 hours in each of those activities, the material participation tests under section 1.469-5T(a)(3) and (7) Temporary Income Tax Regs., supra, are not applicable. The only material participation test available for those activities is whether petitioner's participation for each constituted substantially all of the participation in the separate activities

---

[11]The Court notes that petitioner would also meet the material participation test under sec. 1.469-5T(a)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988), for these properties.

[12]The fact that petitioner did not separate her hours for the duplex's two properties is of no consequence because the hours for both properties is less than 100.

**[\*16]** of all individuals, including individuals who are not owners of interests in the property, for 2010.  See sec. 1.469-5T(a)(2), Temporary Income Tax Regs., supra.

Petitioner ran her rental real estate activities by herself.  She handled all aspects of the business from collecting rent to overseeing the work of repairmen.  She also met prospective buyers and handled problems with utility and service companies.  While petitioner did not physically perform all of the repairs that were necessary at each of those rental properties, she hired multiple contractors and repairmen to handle those repairs.  With the repairs made and the number of different individuals involved in those repairs, no one individual participated in the rental real estate activities to the extent petitioner did.  The Court is satisfied by petitioner's testimony and other evidence that her participation in each of those activities constituted substantially all of the participation in each.  Petitioner meets the material participation test requirements in section 1.469-5T(a)(2), Temporary Income Tax Regs., supra, in relation to the Maldonado, Culpepper, North 9th Avenue, St. Alban Road, Brookside Drive, Calle Hermosa, and Fort Pickens Road properties.  Therefore, petitioner materially participated in those activities for 2010.

**[\*17]**  The Lynn Haven property was a vacant lot in which petitioner had a 50%

ownership interest.  She spent approximately 12 hours meeting with an attorney

and the other owner of the vacant lot discussing whether to develop or sell the

vacant lot.  There is nothing in the record about the participation hours of the other

owner of the vacant lot.  Petitioner has failed to prove that her participation

constituted substantially all of the participation in the activity.  Therefore,

petitioner did not materially participate in the activity for the vacant lot for 2010.[13]

B.    Real Estate Professional

Now that the Court has found that petitioner did indeed materially

participate in her rental real estate activities, the question of whether petitioner

was a real estate professional can be addressed.  The Court can easily dispense

with the requirement under section 469(c)(7)(B)(ii).  Petitioner performed 889.25

hours of services in her rental real estate trade or business in which she materially

participated.  Because she performed more than 750 hours of service, that

requirement was met.

Petitioner must also meet the requirement of section 469(c)(7)(B)(i)--more

than one-half of her personal service hours must be in a real property trade or

---

[13]Petitioner would be entitled to deduct her half of the property taxes for the vacant lot on Schedule A.

[*18] business.  Her other trade or business was that of a stock broker.[14]  She testified that she went into her brokerage office for 2-1/2 hours a day, five days a week and took no vacations in 2010.  That would be a total of 600 hours.  While the Court finds credible petitioner's testimony that she took no vacations in 2010, the Court notes that U.S. stock markets were closed on nine days in 2010, see supra p. 3, and finds that petitioner did not work in her brokerage office those days.  That would reduce her number of hours working as a stock broker to 577.5.  Petitioner's stock broker hours, 577.5, added to her real property hours, 889.25, equals 1,642.75 hours.

Respondent argued that petitioner did not meet the requirement under clause (i) because she did not include the hours she spent meeting with her brokerage clients at lunches and dinners.  Exhibit 17-J comprises receipts from petitioner's business lunches and dinners.  She credibly testified that some were for her brokerage work while others were connected with her rental real estate activities and charities for which she volunteered.  Even if all of the meals were for dinners

---

[14]Although petitioner did volunteer a considerable amount of her time to various charities, as a volunteer she was not holding herself "out to others as engaged in the selling of goods or services."  Snow v. Commissioner, 416 U.S. 500, 502-503 (1974).  Therefore her volunteering did not have the requisite profit motive to be a trade or business.  See Goldstein v. Commissioner, T.C. Memo. 1981-96, 1981 WL 10873, at *3 (citing White v. Commissioner, 23 T.C. 90, 94-95 (1954), aff'd, 227 F.2d 779, 780 (6th Cir. 1955)).

[*19] unrelated to petitioner's rental real estate activities--with an average time of two hours-- more than half of her personal service hours would still be in a real property trade or business. The Court finds that petitioner satisfies the requirements of section 469(c)(7)(B)(i). Therefore petitioner satisfies both requirements of section 469(c)(7)(B) and is a real estate professional. Thus, her Schedule E losses for 2010 are not subject to the section 469 passive loss limitations.[15]

## II.      Unreimbursed Employee Business Expenses

Section 162(a) permits a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. The term "trade or business" includes performing services as an employee. Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). An employee's expenses, however, are not ordinary and necessary if she is entitled to reimbursement from her employer. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Noz v. Commissioner, T.C. Memo.

---

[15]One of the deductions respondent disallowed in the notice of deficiency was a net operating loss (NOL) carryforward from 2008. Respondent's only reason for disallowing the NOL carryforward was that petitioner did not meet the requirements of sec. 469(c)(7).

[*20] 2012-272. Section 6001 requires the taxpayer to maintain records sufficient to establish the amount of each deduction. See also sec. 1.6001-1(a), Income Tax Regs. No deduction is allowed for personal, living, or family expenses. Sec. 262(a).

If a taxpayer cannot substantiate the amount of a deduction, the Court may still allow the deduction, or a portion of the deduction, if there is an evidentiary basis for doing so. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In those instances the Court may estimate the allowable expense, bearing heavily if appropriate against the taxpayer whose inexactitude is of her own making. Cohan v. Commissioner, 39 F.2d at 544. The Cohan rule does not apply, however, to deductions that are subject to the strict substantiation requirements of section 274. Sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

Section 274(d) applies to: (1) any traveling expense, including meals and lodging away from home; (2) entertainment, amusement, and recreational expenses; (3) any expense for gifts; or (4) the use of listed property, as defined in section 280F(d)(4), including passenger automobiles. To deduct such expenses the taxpayer must substantiate by adequate records or evidence sufficient to corroborate the taxpayer's own testimony: (1) the amount of the expenditure or

**[\*21]** use, which includes mileage in the case of automobiles; (2) the time and place of the travel, entertainment, or use; (3) its business purpose; and in the case of entertainment, (4) the business relationship to the taxpayer of each expenditure or use. Sec. 274(d) (flush language).

Petitioner claimed a deduction for unreimbursed employee business expenses of $49,664 on the Schedule A attached to her 2010 return. Respondent disallowed all of petitioner's claimed deduction. The parties stipulated that petitioner paid, but did not stipulate that she substantiated, unreimbursed employee business expenses of $37,740.31 for 2010, which comprises meals and entertainment expenses of $9,687.87, vehicle expenses of $13,747, a bonus paid to an employee of $3,550, cell phone expenses of $592.44, and business expenses of $10,163. Although respondent stipulated that petitioner paid those amounts in 2010, he argued that she did not substantiate any of them.[16]

A.    Meals and Entertainment and Vehicle Expenses

Petitioner's meals and entertainment and vehicle expenses are both subject to strict substantiation under section 274. Over 100 receipts for meals and

---

[16]Petitioner did not offer any evidence to substantiate the $11,923.69 difference between her claimed deduction and the amount of expenses the parties stipulated she paid. Petitioner is deemed to have conceded that amount. See Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986).

[*22] entertainment were submitted into evidence. Some of the receipts are duplicates, and some are illegible. The ones that are legible include the name of the individual or individuals with whom petitioner dined. The receipts do not, however, include the business purpose for the meal. Petitioner testified that she paid for meals that related to her brokerage work, her rental real estate activities, and the charities for which she volunteered. Petitioner did not testify about any meals specifically, and the Court has no way to determine whether each of the meals for which the parties submitted receipts were for business--or whether the meal was for petitioner's brokerage work or her rental real estate activities--or whether the meal was related to petitioner's volunteering. Therefore, respondent's determination to disallow any deduction for all of petitioner's meal and entertainment expenses is sustained.

Petitioner also claimed a deduction for vehicle expenses of $13,747 for 27,493 miles she reported as having driven for her brokerage work. Petitioner provided no mileage log to corroborate her reported mileage. Therefore respondent's determination to disallow a deduction for all of petitioner's vehicle expenses reported on Schedule A is sustained.

**[\*23]**  B.  <u>Employee Bonus</u>

Petitioner had one administrative assistant that worked for her at Wells Fargo.  Petitioner credibly testified that she paid to her assistant bonuses totaling $3,550 in 2010.  Twelve checks drawn on Beach Community Bank were made out to petitioner's assistant and signed by petitioner.  The amounts of the twelve checks varied from $250 to $450 and totaled $3,550.  The name imprinted in the top left corner of each check is "Windham Agency, LLC".  There is nothing written on the memo line of any of the checks.  The Court finds that petitioner did pay her assistant a bonus of $3,550 for brokerage-related work in 2010.[17]

C.  <u>Cell Phone Expenses</u>

The parties stipulated that petitioner paid $592.44 in cell phone expenses for 2010 and entered into evidence petitioner's cell phone bills for 2010.[18]  While

---

[17]Respondent conceded that petitioner was entitled to deduct contract labor expenses of $13,850 for her rental real estate activities.  If the checks drawn on petitioner's real estate business account totaling $3,550 were included in the $13,850, that amount shall be reduced by $3,550, and the $3,550 will be allowed as an unreimbursed employee business expense and properly reported on petitioner's Schedule A when the parties calculate their Rule 155 computations.  If the $3,550 was not included in the contract labor expenses of $13,850, petitioner shall be entitled to contract labor expenses of $13,850 on Schedule E and the bonus payments totaling $3,550 on Schedule A.

[18]Cell phones were no longer listed property under sec. 280F for 2010; therefore petitioner was not required to meet the strict substantiation requirements

(continued...)

[*24] petitioner testified that she used her cell phone for her brokerage work, for her rental real estate activities, and for the charities for which she volunteered, she offered no testimony or other evidence delineating how many cell phone minutes were used for business calls, charity calls, or personal calls. Petitioner has provided no evidentiary basis for applying the Cohan rule to her cell phone expenses. See Vanicek v. Commissioner, 85 T.C. at 742-743 (citing Williams v. United States, 245 F.2d 559 (5th Cir. 1957)). Therefore respondent's determination to disallow all of petitioner's deduction for cell phone expenses is sustained.

D.    Business Expenses

The parties stipulated that petitioner paid "business expenses" of $10,163 for 2010 and entered into evidence receipts totaling that amount. Included with the receipts is a handwritten page entitled "2010 Business Expenses" that groups the receipts into various categories. The Court will use those categories to group and discuss petitioner's expenses.

---

[18](...continued) of sec. 274(d). She must, however, still substantiate that she used her cell phone for business and provide credible evidence as to the amount of business use of her cell phone.

**[\*25]**      1.      <u>Windham Agency LC Incorporation Fee and Toll Expenses</u>

The fee petitioner paid to the State of Florida to incorporate her real estate business is an allowable expense but should properly be reported with her other rental real estate business expenses.  If that amount was not included in the conceded amount of petitioner's rental real estate business expenses, it shall be included in the parties' Rule 155 computations.

Petitioner credibly testified that she had to pay tolls when traveling to and from some of her rental properties and produced toll receipts.  No testimony or other evidence was provided that petitioner had to pay tolls for her brokerage work.  Therefore petitioner is not allowed a deduction for the toll expenses included as a business expense on her Schedule A.  The tolls petitioner incurred to travel to her rental properties, however, if they were not included in the conceded amount of petitioner's rental real estate business expenses, shall be included in the parties' Rule 155 computations.

      2.      <u>Ads, Insurance License, and Wells Fargo State Registration Fees Expenses</u>

Petitioner included receipts for advertisements and sponsorships in her business expenses.  She testified to taking out those ads and to sponsoring events

[*26] to increase her name recognition for her brokerage work. Petitioner is entitled to a deduction for ads and sponsorships of $1,700 for 2010.

Petitioner also included a receipt for payment of an insurance licensing fee of $100 for a nonresident producer for the State of Georgia. She also included receipts from Wells Fargo for chargebacks of State registration fees from Wisconsin, Louisiana, Ohio, and Mississippi for $80, $60, $60, and $50, respectively. Petitioner is entitled to a deduction of $350 for those fees for 2010.

### 3. Dues, Books, AAA, Flowers, Blackberry, and CPA Expenses

Petitioner included receipts for dues of $508, books of $196, AAA of $97, flowers of $458, a Blackberry of $43, subscriptions of $398, gifts of $835, and travel of $924. There was no testimony or other evidence presented concerning the dues petitioner deducted. One receipt entered into evidence has "Irish Palitian Club" handwritten on it. At the bottom of the receipt are logos for four restaurants. No deduction is allowed for dues "incurred for membership in any club organized for business, pleasure, recreation, or other social purpose." Sec. 274(a)(3).

There was no testimony or additional evidence provided for the relation of the books, AAA, flowers, and Blackberry expenses to petitioner's brokerage

**[\*27]** business. Therefore her deductions for those expenses are not allowed, and respondent's determination is sustained.

The parties entered into evidence one receipt for tax preparation fees of $2,750 from petitioner's CPA. Petitioner is entitled to a deduction for tax preparation expenses under section 212(3), but the expense is not an unreimbursed employee business expense. The expense is a miscellaneous deduction and is subject to the 2% floor for itemized deductions. See sec. 67.

### 4. Subscriptions, Gifts, and Travel Expenses

Petitioner testified that she gave gifts of subscriptions or wine to her brokerage clients and, occasionally, to a prospective tenant. There were two receipts entered into evidence with either the word "gift" or "gifts" handwritten on them. One has "$150" handwritten on it; the other has an illegible handwritten amount on it. Two other receipts were entered into evidence that were for subscriptions. One receipt has the name of the recipient of the subscription typed on it and "33.94 Pd 11/1/10" handwritten on it; the second has two subscription recipients' names typed on it and "37.94 Pd 11/1/10" on it. Although petitioner's handwritten document entitled "2010 Business Expenses" lists gifts of $835 and subscriptions of $398, there are no other receipts labeled as gifts or subscriptions in evidence.

**[\*28]** Gifts are subject to the strict substantiation rules of section 274(d). The four receipts entered into evidence do not meet those requirements. Additionally, petitioner has not substantiated the remaining amounts reported as gift expenses. Therefore petitioner is not entitled to a deduction for the amounts she listed as gift and subscription expenses for 2010.

Travel expenses are also subject to the strict substantiation rules of section 274(d). The parties entered into evidence receipts for hotels and taxi rides. Some of those receipts have "women's summit" handwritten on them. Petitioner provided no testimony or additional evidence to explain the business purpose of the travel. Therefore respondent's determination to disallow a deduction for petitioner's travel expenses reported on Schedule A is sustained.

### 5. Office Supplies, Stamps, and Calendar Expenses

The parties entered into evidence receipts for office supplies, stamps, and calendar expenses of $1,266, $146, and $303, respectively. Petitioner had business expenses related to her brokerage business. She also had business expenses for her rental real estate activities and expenses related to her charity work. Although petitioner was a credible witness, it is clear from her testimony and the other evidence in the record that she did not keep her business and charity expenses--or her substantiation of each--separate, as those facets of her life often

[*29] intersected.  There is, however, an evidentiary basis in petitioner's testimony and the other evidence presented at trial for allowing a portion of petitioner's deduction for these expenses.  Therefore the Court will follow the Cohan rule and allow petitioner one-third of her claimed deduction for office supplies, stamps, and calendar expenses.  See Cohan v. Commissioner, 39 F.2d at 543-544.

III.    Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) authorizes a 20% accuracy-related penalty on the portion of an underpayment of Federal income tax attributable to (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.[19]  Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Code.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  There is a "substantial understatement" of income tax for any year if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000.  Sec. 6662(d)(1)(A); Higbee v. Commissioner, 116 T.C. 438, 448 (2001).

---

[19]Respondent included boilerplate in the notice of deficiency that also lists "any substantial valuation overstatement" as a possible reason for his determination of the accuracy-related penalty.  A substantial valuation overstatement is not in issue here.

**[\*30]** Under section 7491(c) the Commissioner bears the burden of production with regard to penalties for an individual taxpayer. <u>Higbee v. Commissioner</u>, 116 T.C. at 446. Once the Commissioner has met the burden of production, the taxpayer has the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority. <u>See</u> Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.

Pursuant to section 6664(c)(1), no penalty shall be imposed under section 6662 with regard to any portion of an underpayment if the taxpayer can show that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Whether a taxpayer acted with reasonable cause and in good faith is decided on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his proper tax liability. <u>Id.</u>; <u>see also</u> <u>Remy v. Commissioner</u>, T.C. Memo. 1997-72, slip op. at 20.

Reliance on the advice of a tax professional may, but does not necessarily, establish reasonable cause and good faith for the purpose of avoiding a section 6662(a) penalty. <u>United States v. Boyle</u>, 469 U.S. 241, 251 (1985). A taxpayer's reliance on a competent tax professional may establish reasonable cause and good

**[\*31]** faith when the taxpayer provides necessary and accurate information to the adviser and actually relies in good faith on the adviser's judgment. See Longino v. Commissioner, 593 F. App'x 965, 970 (11th Cir. 2014), aff'g T.C. Memo. 2013-80; Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Respondent contends that petitioner is liable for the section 6662(a) penalty because there was an underpayment due to a substantial understatement of income tax or, alternatively, to negligence. The parties made concessions before and after trial, and the Court did not sustain the real-estate-related adjustments and some of the other items in the notice of deficiency. The Court finds that in the event the computations under Rule 155 establish that there is a substantial understatement of income tax, then respondent has met his burden of production.

Petitioner argues that she acted in good faith and had reasonable cause because she relied on her CPA. Petitioner testified that her CPA was a former Internal Revenue Service employee. Petitioner's CPA was not called as a witness at trial, and petitioner provided no evidence to corroborate her testimony in regard to her CPA or to otherwise prove her CPA's credentials. That was the extent of petitioner's argument for reliance on her CPA. She entered no evidence to prove that she relied upon her CPA's advice for any of the items reported on her return

[*32] that respondent disputed. "In order to constitute 'advice' under section 1.6664-4(c)(2), Income Tax Regs., the communication must reflect the adviser's 'analysis or conclusion.'" Gould v. Commissioner, 139 T.C. 418, 461 (2012) (quoting Woodsum v. Commissioner, 136 T.C. 585, 593 (2011)), aff'd, 552 F. App'x 250 (4th Cir. 2014). The mere fact that petitioner engaged a CPA to prepare her return will not suffice to establish reliance.

The Court also finds that respondent has met his burden of production with respect to the penalty for negligence or disregard of rules and regulations. Petitioner failed to properly substantiate her claimed deduction for a large portion of the unreimbursed employee business expenses she reported on the Schedule A attached to her return as required under section 6001 and its corresponding regulations. See Kenna Trading, LLC v. Commissioner, 143 T.C. 322, 370 (2014). She offered no evidence of reasonable cause or good faith for her lack of substantiation. Therefore petitioner is liable for an accuracy-related penalty for negligence regarding the portion of her underpayment attributable to the disallowance of her unreimbursed employee business expenses.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

[*33]  To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.